United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUAN AVERILLA,

        Petitioner,

  v.

RAUL LOPEZ,

        Respondent.

_____/

No. C 10-03614 CRB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

     Before the Court is Petitioner Juan Averilla's ("Petitioner's") Petition for Writ of Habeas Corpus (dkt. 1). Petitioner was tried and convicted in 1986.[1] The prosecution's case at trial relied primarily on the testimony of Sheila Averilla, the complaining witness. At trial, Petitioner sought to impeach Sheila by introducing her allegedly false prior accusations that she had been sexually molested by her brother and by her boyfriend at the time. The trial court excluded the evidence, and the California Court of Appeal affirmed, reasoning that the evidence was cumulative of opinions given by the family members questioning Sheila's general truthfulness.

     Because the exclusion of highly relevant, non-cumulative impeachment evidence violated Petitioner's confrontation and due process rights and the California Court of

---

[1] Although verdicts were reached in July 1986, Petitioner fled the jurisdiction and was not sentenced until January 2008. California Court of Appeal Opinion (dkt. 8, Ex. 10) ("Op.") at 1. The parties agree that Petitioner's period of absence does not affect the posture of the case, and that the Court should evaluate the Petition on the merits. Cf. Ortega-Rodriguez v. United States, 507 U.S. 234, 249 (1993).

Appeal's dismissal of Petitioner's constitutional claims ran contrary to and was an unreasonable application of Supreme Court precedent, the Petition for Writ of Habeas Corpus is GRANTED.

## I.     BACKGROUND

On July 1, 1986, a jury found Petitioner Juan Averilla guilty of three counts of committing a lewd and lascivious act upon a child under the age of 14 years by use of force, violence, duress, menace, or threat of great bodily harm, one count of sexual penetration by a foreign object, and one count of forcible rape. Op. at 1.[2] Sheila Averilla, the complaining witness and Petitioner's daughter, alleged that Petitioner touched her breasts and vagina when she was 12, again when she was 13, and then an additional five to ten times. Id. at 3. Sheila testified that Petitioner did not threaten her or use force, but she was afraid that he would hit her if she refused. Id. Sheila claimed to have told her sister that Petitioner had made "passes" at her, but her sister did not pay attention. Id.

In October 1985, Sheila told Mark Castoreno, her friend, that she had been sexually molested. Id. at 4. Mark Castoreno called numerous crisis centers and spoke with Sergeant Lucy Carlton, a police officer, on October 28, 1985. Id.; § at 5. At Sergeant Carlton's request, Mark Castoreno brought Sheila to the police station for an interview. Op. at 4. Sergeant Carlton interviewed Sheila twice, first on November 1 and again on November 4, as memorialized in Sergeant Carlton's police report listing both Petitioner and Rommel Carlos, Sheila's boyfriend at the time, as suspects.[3] Id.

At the beginning of the trial, Petitioner sought to introduce Sheila's statements to her doctor that Rommel Carlos had raped her, and that her brother, John Averilla, "had made a pass" at her. Op. at 7. Petitioner submitted an offer of proof stating that Sergeant Carlton

---

[2] Reporter transcripts from the trial are not available, so the facts are taken from the California Court of Appeal's opinion and the Settled Statement for Jury Trial (dkt. 8, Ex. 6) ("SS"). See Op. at 2 n.2. The parties agree that the Settled Statement is the only proper source of evidence regarding trial proceedings. Because the Settled Statement is a summary prepared by the parties and the trial court, rather than transcribed witness testimony, the Court does not draw any inferences from the language used in the Settled Statement.

[3] The Settled Statement refers to Sheila's boyfriend at the time as both "Rommel Carlos" and "Carlos Rommel." See, e.g., § at 5.

and John Averilla would testify to the inconsistencies of Sheila's statements. <u>Id.</u> The trial court excluded the evidence, believing that sexual conduct could not be used as impeachment evidence under California Evidence Code sections 1103(b)(1) and 787.[4] <u>Id.</u>

During trial, Mark Castoreno testified that Sheila informed him in confidence that she had been sexually molested, but his testimony did not identify who Sheila accused of molesting her. <u>Id.</u> Petitioner moved to admit evidence that Sheila's initial complaint to Mark Castoreno concerned sexual abuse by Rommel Carlos, not Petitioner. <u>Id.</u> Petitioner argued that excluding the evidence would mislead the jury to believe that the statements concerned Petitioner, and only Petitioner, from the beginning. <u>Id.</u> Outside of the presence of the jury, Sergeant Carlton testified that her initial contact with Mark Castoreno only concerned Sheila's boyfriend, and that Sheila did not indicate that her father molested her until their second meeting. <u>Id.</u> at 8. Petitioner's counsel had spoken with Rommel Carlos, who denied any non-consensual sex with Sheila but refused to testify at trial in fear of self-incrimination. <u>Id.</u> However, because the trial court limited Sergeant Carlton's testimony to exclude the content of her conversations with Mark Castoreno and Sheila, Sergeant Carlton's testimony before the jury was limited to confirming that Mark Castoreno contacted her and brought Sheila to meetings, and that Sheila had indicated to Sergeant Carlton that Petitioner had molested her. <u>Id.</u> at 5-6.

Petitioner testified in his own defense, denying any inappropriate conduct. <u>Id.</u> at 8. Petitioner called Merlita Averilla, his wife and Sheila's mother, as well as their children Rhiz Averilla, John Averilla, and Joel Averilla to testify on his behalf. <u>Id.</u> at 4-6. All of the family members denied observing any sexually inappropriate behavior, noted that Sheila never displayed any concern about being alone with Petitioner, and believed that Sheila was Petitioner's "favorite." <u>Id.</u> The family members all testified that they believed Sheila was "untruthful." <u>Id.</u>

---

[4] At the time of the trial, California Evidence Code section 1103(b) prohibited evidence of the complaining witness's sexual conduct to prove consent. Cal. Evid. Code § 1103(b)(1) (1981) (this subdivision has been renumbered as (c)(1)). California Evidence Code section 787 prohibited evidence of specific incidents relevant only as tending to prove a trait of character to support or attack a witness's credibility. Cal. Evid. Code § 787.

**United States District Court**
For the Northern District of California

At the conclusion of the evidence and after Sheila's testimony was re-read, the jury returned verdicts of guilty on all counts. Id. at 8.  On June 20, 2008, Petitioner was sentenced to eighteen years in prison. Id. at 1.

On March 8, 2010, the California Court of Appeal affirmed Petitioner's conviction in an unpublished decision. Id. at 18.  The court acknowledged that the trial court erroneously excluded the evidence, but concluded that the exclusion was harmless error. Id. at 13-14 & 14 n.6.  The court viewed the excluded impeachment evidence as cumulative because the family members had all testified that Sheila was untruthful. Id. at 13.  The court dismissed Petitioner's constitutional claims because Petitioner "was not precluded from raising a defense." Id. at 14-15.  The California Supreme Court denied review without providing a reasoned opinion.  Denial of Review (dkt. 8, Ex. 14).

## II.     LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") gives the Court jurisdiction to entertain a petition for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's

United States District Court
For the Northern District of California

1  decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at

2  413.  "[A] federal habeas court may not issue the writ simply because that court concludes in

3  its independent judgment that the relevant state-court decision applied clearly established

4  federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."

5  Id. at 411.  "[A] federal habeas court making the 'unreasonable application' inquiry should

6  ask whether the state court's application of clearly established federal law was objectively

7  unreasonable."  Id. at 409.

8       The only definitive source of established federal law under 28 U.S.C. § 2254(d) is in

9  the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court

10  decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003), overruled in part

11  on other grounds, Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  Clearly established

12  federal law is defined as "the governing legal principle or principles set forth by the Supreme

13  Court."  Lockyer, 538 U.S. at 71-72.  While circuit law may be "persuasive authority" for

14  purposes of determining whether a state court decision is an unreasonable application of

15  Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts,

16  and only those holdings need be "reasonably" applied.  Clark, 331 F.3d at 1069.

17  **III.   DISCUSSION**

18       The California Court of Appeal is the highest court to address the merits of

19  Petitioner's claim in a reasoned decision, so the Court looks to the opinion of the state Court

20  of Appeal when evaluating Petitioner's claim.  See Avila v. Galaza, 297 F.3d 911, 918 (9th

21  Cir. 2002).  Petitioner alleges violation of his right to confront witnesses and his right to

22  present a defense.  Traverse (dkt. 12) ("Trav.") at 7, 24.

23       **A.    The Excluded Evidence Was Not Cumulative of Evidence in the Record**

24       The core issue that affects all of Petitioner's claims is whether the contents of Sheila's

25  conversations with Mark Castoreno and her allegations against Juan Averilla and Rommel

26  Carlos were cumulative of the family's testimony that Sheila was "untruthful."  If the

27  evidence is considered cumulative, then its exclusion did not result in a constitutional

28  violation and no harmful error occurred.  On the other hand, if the excluded evidence is

5

considered to be substantively different from the family's testimony that Sheila was untruthful, then serious constitutional issues arise.

Petitioner offered the excluded evidence through cross-examination to impeach the testimony of Sheila and Mark Castoreno. § at 1-2, 4. The California Court of Appeal concluded that the family's testimony that Sheila was "untruthful" adequately challenged her credibility, and that, therefore, the excluded evidence was merely cumulative. Op. at 13-15.

The Supreme Court has recognized that witness impeachment in the adversarial system, whether elicited during cross-examination or introduced by extrinsic evidence, falls into two categories: general attacks on credibility to suggest that the witness is "less likely than the average trustworthy citizen to be truthful in his testimony," and particular attacks on credibility that reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." Davis v. Alaska, 415 U.S. 308, 316. The factual basis for any attack on credibility is critical impeachment evidence that the accused must be allowed to offer. Id. at 317-18. In Davis, the petitioner was convicted of burglary based on the critical testimony of Richard Green. Id. at 310. The prosecution moved for a protective order prohibiting references to Green's juvenile criminal history during cross-examination. Id. The petitioner opposed the order, seeking to introduce Green's criminal history to demonstrate that Green acted out of fear of jeopardizing his ongoing probation, not to impeach Green's general truthfulness. Id. at 311. The trial court granted the protective order. Id. The Alaska Supreme Court affirmed the petitioner's conviction, holding that the cross-examination was still sufficient to raise issues of Green's credibility because the petitioner's counsel had the opportunity to ask Green whether he was biased or not. Id. at 314-15.

The Supreme Court reversed, rejecting the Alaska Supreme Court's conclusion that the petitioner's opportunity to ask Green about bias satisfied his right to confrontation. Id. at 318. To make the cross-examination effective, the petitioner should have been allowed to make particularized challenges to Green's credibility that would reveal "possible biases, prejudices, or ulterior motives," allowing the jurors to "make an informed judgment as to the

6

**United States District Court**
For the Northern District of California

weight to place on Green's testimony which provided 'a crucial link'" in determining the petitioner's guilt. Id. at 317-18. Without the record supporting the petitioner's challenge to Green's credibility on the grounds of bias, the cross-examination risked misleading the jury to think the petitioner engaged in a baseless attack on a blameless witness. Id. at 318. The denial of an effective cross-examination was "'constitutional error of the first magnitude.'" Id. (quoting Brookhart v. Janis, 384 U.S. 1, 3 (1968)).

Here, the exclusion of Sheila's allegations against John Averilla and Rommel Carlos deprived the jury of information critical to evaluating her credibility, raising the Davis Court's primary concern. Like in Davis, Sheila's credibility formed the heart of the prosecution's case. Op. at 13 ("Basically, this trial was a credibility contest between Sheila and appellant."). Without knowing about Sheila's allegedly false accusations against John Averilla, the jury could not evaluate her accusations against Petitioner in the full context of a pattern of false accusations and a possible underlying motive. Moreover, the absence of Sheila's allegations against Rommel Carlos misled the jury to believe that the testimony of Mark Castoreno and Sergeant Carlton corroborated Sheila's accusations against Petitioner as a "fresh complaint." Without knowledge of Sheila's prior allegations, the jury might have discounted evidence questioning Sheila's testimony and believed that Petitioner and his family were making "baseless attacks" on Sheila's credibility. Instead, the evidence withheld from the jury demonstrates that Sheila's conversations with Mark Castoreno only discussed Rommel Carlos, that Mark Castoreno's phone calls with Sergeant Carlton only discussed Rommel Carlos, and that Sheila did not ever mention Petitioner as an alleged abuser until her second meeting with Sergeant Carlton. See § at 4-5. Had the evidence been introduced, the jury would have had a dramatically different factual basis from which to evaluate Sheila's credibility and her motives in making the allegations. That basis would have provided the jury with the opportunity to "make an informed judgment as to the weight to place on [Sheila's] testimony," which formed the heart of the prosecution's case against Petitioner. Davis, 415 U.S. at 317. The prior allegations provided a substantively distinct

7

theory of impeachment and were not cumulative of the general opinion evidence provided by the family members.

Applying <u>Davis</u> to post-AEDPA habeas petitions, federal Courts of Appeals have concluded that false prior allegations of sexual abuse are distinct from general credibility evidence, and therefore not cumulative.  <u>See</u> <u>White v. Coplan</u>, 399 F.3d 18, 26 (1st Cir. 2005) (prior false allegations are "far more potent than 'general credibility' evidence"); <u>Redmond v. Kingston</u>, 240 F.3d 590, 591-92 (7th Cir. 2001) (finding the state court's exclusion of a false rape accusation an unreasonable application of Supreme Court confrontation doctrine).  In <u>Redmond</u>, the complaining witness alleged that the petitioner provided her with cocaine in exchange for sex.  240 F.3d at 591.  The prosecution acknowledged that the principal evidence against the petitioner consisted of the complaining witness's testimony and that of another witness who merely repeated the complaining witness's testimony.  <u>Id.</u>  Eleven months before the alleged offense, the complaining witness told her mother that she had been forcibly raped.  <u>Id.</u>  The complaining witness later admitted that the allegations were false and had been made up to get her mother's attention, leaving no doubt as to the falsity of her original allegations.  <u>Id.</u>  At his trial, the petitioner sought to introduce evidence of the prior false allegations to show that the complaining witness would make false accusations to get attention.  <u>Id.</u>  The trial judge excluded the evidence and the Wisconsin Court of Appeals affirmed.  <u>Id.</u>  The state court of appeals found the "false charge 'merely cumulative of other evidence which went to [the complaining witness's] credibility.'"  <u>Id.</u>  The record contained evidence that the complaining witness had been using drugs from a young age, had stolen and danced to obtain money for cocaine, had skipped school, and had told lies in the past.  <u>Id.</u>

The Seventh Circuit granted the petition, holding that the state court's exclusion of the evidence violated the petitioner's confrontation rights because the evidence was not cumulative.  <u>Id.</u>  The court noted that the complaining witness's testimony was "virtually the only evidence of guilt that the prosecution had."  <u>Id.</u> at 592.  None of the other evidence related to the complaining witness's credibility involved a false rape charge or furnished a

8

United States District Court
For the Northern District of California

motive for making a false allegation.  Id. at 591.  The complaining witness's past and tendency to lie, while relevant to her credibility as general impeachment evidence, did not furnish a motive for false sexual allegations.  Id.  However, the evidence that the complaining witness made a false allegation to get attention did suggest a motive for her allegations against the petitioner.  Id. at 591-92.

In White, the state court barred the petitioner from introducing evidence that the two complaining witnesses had made similar accusations against others in order to challenge the credibility of the accusations against him.  399 F.3d at 19.  The petitioner had offered evidence to support the falsity of the statements, and emphasized the similarity between the prior accusations and the accusations against himself.  Id. at 21-22.  The trial court excluded the evidence, concluding that the prior accusations only bore generic similarities to the instant accusations and relying on a state rule of evidence requiring that the allegations be "demonstrably false."  Id. at 22.  The New Hampshire Supreme Court affirmed the petitioner's convictions for sexual assault, relying on state evidence rules and the state constitution to conclude that the federal Constitution had not been violated.  Id.  The district court magistrate judge denied the petition, holding that the state court error did not rise to the level that AEDPA requires.  Id. at 23.

The First Circuit reversed and granted the petition, holding that the evidence was not cumulative of other evidence and that its exclusion violated the petitioner's right to confront witnesses.  Id. at 26.  The court began by recognizing that the excluded evidence was not "general" credibility evidence that would show a witness's tendency to lie.  Id. at 24.  The excluded accusations were of sexual assault, and bore a close resemblance to the two complaining witnesses' testimony in the case.  Id.  If the prior accusations were false, then they could suggest a pattern and an unknown, underlying motive.  Id.  The court acknowledged that the complaining witnesses were unlikely to admit the falsity, so establishing the falsity of the prior allegations risked confusion and complication of the issues.  Id. at 25.  However, because the petitioner limited his appeal to the issue of confrontation, the court recognized that the ability to ask about the prior allegations would

United States District Court
For the Northern District of California

have revealed significant information about the credibility of the witnesses, even if extrinsic evidence were not allowed.  Id.  Because the entire case essentially turned on the credibility of the two complaining witnesses and the other evidence in the record did not have comparable impeachment value, the First Circuit concluded that barring the petitioner from inquiring into the prior allegations on cross-examination violated his confrontation rights.  Id. at 26.  The court limited its holding to the right to cross-examine, noting that introducing extrinsic evidence carries a higher risk of confusion because additional witnesses and documents might be required.  Id.

Here, like in Redmond and White, no physical evidence existed and the only corroborating witnesses, Mark Castoreno and Sergeant Carlton, merely repeated what Sheila had told them.  Op. at 3-4.  Like in Redmond, general evidence impeaching Sheila's credibility existed in the form of the family's testimony that Sheila was "untruthful," but that evidence did not carry the same impeachment value as the prior allegations.  Id.  Redmond and White strongly support a finding that the prior allegations were not cumulative of the general credibility evidence, because introduction of Sheila's prior accusations could have established a pattern and an underlying motive fueling her accusations against Petitioner.  Like in White, Sheila's accusations against her brother, John Averilla, were factually very similar to those against Petitioner and therefore had powerful impeachment value.  Sheila testified at trial that Petitioner made "passes" at her.  Id. at 3.  Petitioner sought to introduce evidence that Sheila claimed that her brother "'made a pass' at her" to indicate he had sexually molested her.  Id. at 7; § at 2.  Furthermore, like in White, there existed a reasonable probability that Sheila's allegation against John Averilla was false.  John Averilla testified at trial, and Petitioner's offer of proof indicated that John Averilla would testify to the falsity of Sheila's allegations against him.  Op. at 7.  Thus, permitting the evidence to be introduced would not have required additional witnesses or taken up an undue amount of time, alleviating the First Circuit's concern in White about confusing the jury with the introduction of extrinsic evidence.

10

United States District Court
For the Northern District of California

While verifying the falsity of Sheila's accusations against Rommel Carlos presented a more difficult challenge at the original trial, before the Court of Appeals heard the case, Rommel Carlos indicated that he was prepared to testify.  Clerk's Transcript (dkt. 8, Ex. 1) ("CT") at 252-53, 256-57.  Still, even before the original trial, Petitioner's attorney had spoken to Rommel Carlos who denied any improper conduct, providing a reasonable basis for at least asking Sheila and Mark Castoreno about the allegations.[5]  Op. at 5.  In <u>White</u>, the First Circuit recognized that simply asking about the allegations during cross-examination, even without introducing extrinsic evidence, could reveal valuable impeachment information by exposing the motives driving the accusations.

<u>Davis</u>, <u>Redmond</u>, and <u>White</u> all strongly support the conclusion that the prior allegations were not cumulative of the family's opinion that Sheila was untruthful.  Sheila's allegations against John Averilla were verifiable at trial and bore a close resemblance to the allegations against Petitioner.  The excluded allegations established a possible pattern, raising serious questions about Sheila's motives behind making allegations of sexual abuse.  The excluded evidence was particularized evidence of Sheila's credibility tied closely to the specific facts before the jury, not just statements of her general character for truthfulness.  Finally, exclusion of the allegations deprived the jury of information critical to making a proper evaluation of Sheila's credibility.  The California Court of Appeal's holding that the excluded evidence was merely cumulative ran contrary to the principles announced in <u>Davis</u>, and applied in <u>Redmond</u> and <u>White</u>.  The excluded evidence was not cumulative and had powerful impeachment value beyond the other evidence in the record.

**B.    The State Court Violated Petitioner's Confrontation Clause Rights by Improperly Limiting His Cross-Examination of the Prosecution's Two Leading Witnesses**

The Confrontation Clause provides an accused the right to "be confronted with witnesses against him," and applies to the states through the Fourteenth Amendment.  U.S. Const. amend. VI; <u>Pointer v. Texas</u>, 380 U.S. 400, 403 (1965).  The right of confrontation

---

[5] At the hearing, the state conceded that Petitioner had a proper basis for questioning Sheila and Mark Castoreno about the accusations against Rommel Carlos.

**United States District Court**
For the Northern District of California

1   ensures that the reliability of evidence be tested "in the crucible of cross-examination."

2   Crawford v. Washington, 541 U.S. 36, 61 (2004).  The reliability of a witness may be

3   attacked with general evidence of untrustworthiness or through more particularized attacks to

4   reveal "biases, prejudices, or ulterior motives" that relate to the testimony.  Davis, 415 U.S.

5   at 316.  Trial courts have wide latitude to impose reasonable limits on cross-examination

6   based on concerns of harassment, prejudice, confusion, witness safety, repetitive testimony,

7   or relevance, but prohibiting all inquiry into a relevant avenue of impeachment raises

8   Confrontation Clause concerns.  Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).  The

9   Sixth Amendment is violated when "a jury 'might reasonably' have questioned the witness's

10  reliability or credibility in light of the cross-examination."  Fowler v. Sacramento County

11  Sheriff's Dept., 421 F.3d 1027, 1036 (9th Cir. 2005) (quoting Van Arsdall, 475 U.S. at 679).

12      To determine whether a Confrontation Clause violation occurred, courts evaluate three

13  factors: (1) whether the evidence was relevant; (2) whether there were legitimate interests

14  that outweighed the defendant's interests in presenting the evidence; and (3) whether the

15  exclusion of the evidence left the jury with sufficient information to assess the credibility of

16  the witness.  United States v. James, 139 F.3d 709, 713 (9th Cir. 1998) (quoting Wood v.

17  Alaska, 957 F.2d 1544, 1550 (9th Cir. 1992)).  To evaluate whether the error deprived the

18  jury of full opportunity to assess the witness's credibility and had a "substantial and injurious

19  effect" under the third factor, courts consider the non-exclusive factors of: "(1) the

20  importance of the witness'[s] testimony in the prosecution's case; (2) whether the testimony

21  was cumulative; (3) the presence or absence of evidence corroborating or contradicting the

22  testimony of the witness on material points; (4) the extent of cross-examination otherwise

23  permitted; and (5) the overall strength of the prosecution's case."  Merolillo v. Yates, 663

24  F.3d 444, 455 (9th Cir. 2011) (citing Van Arsdall, 475 U.S. at 684).

25          **1.    The State Court Improperly Prohibited Petitioner from Questioning
                    Sheila Regarding Her Allegations Against John Averilla and Her
26                  Complaints to Mark Castoreno**

27      Petitioner's first Confrontation Clause claim is that the trial court improperly

28  prohibited him from asking Sheila about her prior allegedly false accusation of sexual abuse

and her initial complaints to Mark Castoreno.  Trav. at 25.  The California Court of Appeal acknowledged that exclusion of the evidence constituted error, but concluded that the exclusion did not violate the Constitution and was harmless.  Op. at 14 n.6.  Consideration of the James and Van Arsdall factors confirms that constitutional error occurred and that harmful error resulted.

### a.   Sheila's Prior Allegations Had High Relevance as Particularized Impeachment Evidence

Sheila's prior false allegations were highly relevant to the credibility of Sheila's accusations against Petitioner.  Evidence discrediting a critical witness by showing a tendency to fabricate allegations is relevant, and its exclusion could violate the Confrontation Clause.  Holley v. Yarborough, 568 F.3d 1091, 1099 (9th Cir. 2009).[6]  In Holley, the petitioner babysat the complaining witness, who alleged that she sat on the petitioner's lap during car rides and he rubbed her legs and breasts.  Id.  The complaining witness also testified that the petitioner asked her to take off her clothes and exposed himself to her.  Id. at 1095-96.  The petitioner denied any inappropriate behavior.  Id.  No physical evidence existed, and no corroboration of the complaining witness's testimony existed other than her brother's inconsistent testimony.  Id. at 1100 & n.1.  At trial, the petitioner sought to impeach the complaining witness by introducing the testimony of two neighborhood children about the complaining witness's prior claims of sexual behavior, demonstrating her propensity to fabricate sexual allegations.  Id. at 1096-97.  The trial court excluded any references to sex or sexual conduct, whether on cross-examination or through new witnesses.  Id. at 1097.  The California Court of Appeal affirmed the conviction, finding that the evidence had questionable relevance, had high potential for being unduly prejudicial, and did not warrant the consumption of time.  Id. at 1099.  The petitioner filed a federal habeas petition, which the district court denied.  Id. at 1097.

The Ninth Circuit reversed and granted the petition, holding that the limitations placed on cross-examination and exclusion of evidence violated the petitioner's right of

---

[6] While Ninth Circuit cases are not binding, they are persuasive authority when applying established Supreme Court precedent.  Clark, 331 F.3d at 1069.

confrontation. <u>Id.</u> at 1101.  The court found the evidence "clearly relevant to impeach [the complaining witness], and thus allow the jury to evaluate the credibility of her allegations." <u>Id.</u> at 1099 (citing <u>Van Arsdall</u>, 475 U.S. at 680).  The court also found that the evidence was not unduly prejudicial.  <u>Id.</u>  The purpose of the impeachment evidence was to discredit the complaining witness's claims against the petitioner, precisely the type of cross-examination that the Confrontation Clause guaranteed. <u>Id.</u> at 1099-1100.  Finally, the court noted that the cross-examination's probative value warranted spending time on the issue, and that the trial court could have limited the length of cross-examination rather than excluding all sexual references. <u>Id.</u> at 1100.

Here, like in <u>Holley</u>, the excluded evidence was highly relevant to impeach Sheila's credibility.  A prior false allegation by Sheila of sexual abuse against her brother, John Averilla, would have undermined the credibility of her allegations against Petitioner. Petitioner offered Sheila's allegation that John Averilla had "made a pass at her" and that Sheila had previously used the language to mean sexual molestation.  § at 2.  Sheila also used "passes" in her trial testimony to refer to molestation by Petitioner, making the alleged accusation factually similar to the allegations against Petitioner.  <u>Id.</u> at 3.  John Averilla testified at trial and would have testified to the falsity of Sheila's allegation.  <u>See</u> § at 2.

The excluded evidence regarding Sheila's complaint to Mr. Castoreno also had high relevance.  Petitioner offered the testimony of Sergeant Carlton, who testified outside the presence of the jury that her initial investigation only involved Rommel Carlos, and that Sheila only indicated that her father had molested her a week after Sergeant Carlton's initial contact with Mark Castoreno.  <u>Id.</u> at 4-5.  Questioning on cross-examination could have explored why Sheila did not indicate that Petitioner molested her in her complaints to Mark Castoreno or during her initial meeting with Sergeant Carlton, and exposed an underlying motive for a pattern of false accusations.  Exploring a witness's "biases, prejudices, or ulterior motives" as a particularized attack on credibility is the core of the Confrontation Clause.  <u>See</u> <u>Davis</u>, 415 U.S. at 316.  Sheila's prior accusations and the details of her initial complaint to Mark Castoreno and Sergeant Carlton were relevant to Sheila's credibility.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**b.    The State Did Not Have Substantial Interests Justifying Complete Exclusion of the Evidence**

The Court of Appeal acknowledged that the excluded evidence was "admissible," and that the trial court "erred in excluding the evidence," but held that no harm resulted because the evidence was cumulative.  Op. at 14 n.6.  However, as discussed above, the state court unreasonably considered the excluded evidence as merely cumulative.

Like in Holley, any concerns about the consumption of time during the cross-examination could have been alleviated by imposing a reasonable time limit on cross-examination rather than completely excluding the highly probative material.  See Holley, 568 F.3d at 1100.  Furthermore, while having John Avillera testify as to the falsity of Sheila's prior allegation against him would have taken some additional time, it would not have created a significant "trial within a trial."  John Avillera did testify at trial, though prevented from discussing Sheila's allegation, and the questioning and cross-examination about his conduct related to Sheila would not have been unduly time consuming.  The Court of Appeal unreasonably excluded all inquiry into Sheila's allegedly false prior accusations.

**c.    The Exclusion of Sheila's Prior Allegations Deprived the Jury of Information Critical to Fully Assessing Sheila's Credibility**

In a case based primarily on the complaining witness's credibility, "[p]recluding cross-examination of a 'central, indeed crucial' witness to the prosecution's case is not harmless error."  Holley, 568 F.3d at 1100 (quoting Olden v. Kentucky, 488 U.S. 227, 232-233 (1988) (per curiam)).  During closing arguments in Holley, the prosecutor conceded that the case turned entirely on the credibility of the complaining witness and her brother, highlighting the lack of physical or corroborating evidence.  Id.  Given the case's dependence on the complaining witness's credibility, the Ninth Circuit held that the trial court's exclusion of sexual references with high impeachment value from cross-examination denied the petitioner a fair trial.  Id. at 1101.

Here, like in Holley, the exclusion of prior allegations from cross-examination constituted harmful error after consideration of the Van Arsdall factors.  The first factor is the importance of the testimony in the prosecution's case.  The Court of Appeal

acknowledged that, because of the absence of corroborating physical evidence, "this trial was a credibility contest between Sheila and [Petitioner]." Op. at 13. Sheila was the prosecution's critical witness among only three fact witnesses: Sheila, Mark Castoreno, and Sergeant Carlton. § at 3-6. As the only percipient witness, Sheila's testimony formed the heart of the prosecution's case, and Mark Castoreno and Sergeant Carlton could only testify about information they learned through their conversations with Sheila.

The second factor is whether the testimony was cumulative. As discussed above, the excluded evidence was not cumulative, and its exclusion deprived the jury of the opportunity to make an informed judgment about Sheila's testimony.

The third factor is the presence or absence of corroborating evidence. No physical evidence existed in this case. Op. at 13. Sheila was the only percipient witness, so Mark Castoreno and Sergeant Carlton could only provide statements derived from their conversations with Sheila. § at 4-6. Any corroborating evidence supporting Sheila's testimony relied entirely on Sheila's credibility. On the other hand, Petitioner had Sergeant Carlton and Dr. David L. Kerns, the recipients of the allegations, to corroborate his claim that Sheila made the allegations. See id. at 2.

The fourth factor is the extent of cross-examination permitted. Because the trial court excluded the prior allegations from cross-examination, the Settled Statement does not reflect any meaningful cross-examination. See id. at 3.

The final factor is the overall strength of the prosecution's case. Here, the prosecution's case relied almost entirely on Sheila's credibility. See Op. at 13. The jury asked for Sheila's testimony to be re-read, indicating that the jurors wanted to review what was essentially the prosecution's entire case again before reaching a verdict.[7] See Op. at 8.

---

[7] The State contends that the jury's short deliberation indicates that this was not a close case. Answer (dkt. 7) at 11. However, the evidence required less than two days to present, indicating that the jury did not have much evidence to consider. Op. at 8. Given the limited amount of evidence the jury had to consider, the half day of deliberation indicated that this was far from an "open and shut" case. Id. The jury's request for a reading of Sheila's testimony and then promptly deciding against Petitioner highlights the importance of Sheila's testimony to the prosecution's case. See id. at 11.

The Van Arsdall factors indicate that the Court of Appeal unreasonably concluded that the error did not result in harm because it treated the evidence as cumulative.  Exclusion of the prior incidents from cross-examination of Sheila violated Petitioner's Confrontation Clause rights and resulted in harmful error with a "substantial and injurious effect" on the verdict.  See Brecht, 507 U.S. at 638.

**2.    The State Court Improperly Excluded the Details of Sheila's Initial Complaint from Petitioner's Cross-Examination of Mark Castoreno**

Petitioner's second Confrontation Clause claim is that the trial court improperly denied him the opportunity to cross-examine Mark Castoreno regarding Sheila's complaints.  Trav. at 27.  The California Court of Appeal rejected Petitioner's Confrontation Clause claim finding that any error was harmless because the record contained other evidence that questioned Sheila's credibility.  Op. at 14 n.6.

**a.    As the Prosecution's Primary Corroborating Witness, Mark Castoreno's Testimony About Sheila's Initial Statements Was Highly Relevant**

Petitioner's proffered cross-examination of Mark Castoreno was highly relevant to Sheila's credibility.  Mark Castoreno's testimony served as the primary corroboration for Sheila's accusations by suggesting that, in confidence, she had told Mark Castoreno that Petitioner abused her.  See § at 4.  Petitioner sought to complete Mark Castoreno's testimony by eliciting the fact that Sheila's complaints to Mr. Castoreno and his initial contact with Sergeant Carlton only concerned Rommel Carlos.  Id. at 4-5.  This evidence would have been probative to explore Sheila's motives for later adding allegations against Petitioner.  Outside of the presence of the jury, Sergeant Carlton provided testimony suggesting that Sheila never spoke to Mark Castoreno about Petitioner.  See id. (Sheila did not make allegations against Petitioner until her second meeting with Sergeant Carlton, a week after Mark Castoreno first contacted Sergeant Carlton).  Like the evidence excluded from cross-examination of Sheila, the evidence excluded from cross-examination of Mark Castoreno was relevant to the issue of Sheila's credibility.

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### b.    The State Did Not Have Interests that Justified Complete Exclusion of the Evidence

Like with the cross-examination of Sheila, the state's interest in excluding the evidence was limited to its belief that the evidence was merely cumulative.  See Op. at 14 n.6.  However, given the high relevance, the state court's interest in efficiency should have given way to presentation of the evidence subject to reasonable limitations on the amount of time to be spent.  As discussed above, the excluded evidence was not substantively cumulative of other evidence in the record.

### c.    Mark Castoreno's Incomplete Testimony Misled the Jury to Believe that His Testimony Corroborated Sheila's Accusations

Consideration of the Van Arsdall factors reveals that preventing Petitioner from cross-examining Mark Castoreno deprived the jury of information essential to evaluating Sheila's credibility.  First, Mark Castoreno's testimony was important to the prosecution's case because it provided the primary corroboration of Sheila's direct testimony.  Cf. § at 4.  The jury's mistaken view that Sheila shared her allegations against Petitioner with Mark Castoreno in confidence artificially bolstered the credibility of her testimony.

Second, the evidence was not cumulative.  No evidence of the content of Sheila's initial complaint to Mark Castoreno was permitted before the jury.  See § at 4-5.  The evidence in the record, but not before the jury, showed that Sheila's initial complaints to Mr. Castoreno accused her boyfriend, Rommel Carlos, and did not mention Petitioner.  § at 4-5.  Sheila did not add allegations against Petitioner until her second meeting with Sergeant Carlton, a week after Mark Castoreno initially contacted the police.  Id.  In the absence of this evidence, Mark Castoreno's testimony suggested that Sheila had made a "fresh complaint" to him that Petitioner had molested her.

Third, no meaningful corroboration existed supporting the belief that Sheila's initial complaints only mentioned Petitioner.  The record only corroborated immaterial facts; for example, Sergeant Carlton corroborated that she received calls from Mark Castoreno and that he brought Sheila to the police station for interviews.  See § at 5-6.  Sergeant Carlton was not permitted to testify about the content of the calls.  See id.  There is no corroboration that the

**United States District Court**
For the Northern District of California

Sheila ever spoke to Mark Castoreno about Petitioner, the core purpose of Mark Castoreno's testimony in the prosecution's case.  The evidence withheld from the jury refutes that understanding of the facts.  See id.  Sergeant Carlton's testimony corroborates Petitioner's assertion that Sheila only spoke to Mark Castoreno about Rommel Carlos.  Id.

Fourth, no meaningful cross-examination existed.  The record is devoid of any cross-examination of Mark Castoreno, and the trial court denied Petitioner's motion to permit questioning about the content of his conversations with Sheila, the only relevant topic of cross-examination.  See id. at 4-5.

Finally, as discussed above, the strength of the prosecutor's case relied entirely on Sheila's credibility and the prosecution did not present an overwhelming case.

Because the trial court prevented Petitioner from exploring the nature of Sheila's original complaint, the jury could not evaluate Mr. Castoreno's corroborating testimony in context.  Without meaningful cross-examination, Mr. Castoreno's testimony suggested to the jury that Sheila's allegations against Petitioner constituted a "fresh complaint," first to Mr. Castoreno and then to Sergeant Carlton.  Mark Castoreno's testimony at trial only concerned Sheila's conduct before she made any allegations against Petitioner.  See § at 4 (testimony before the jury only covered events ending with Sheila's first interview with Sergeant Carlton, but Sheila did not make any allegations against her father until her second meeting with Sergeant Carlton).  The absence of meaningful cross-examination misled the jury to believe that Mr. Castoreno's testimony corroborated Sheila's allegations of sexual abuse against Petitioner, and Petitioner only.  The exclusion of evidence deprived the jury of sufficient information to assess the credibility (and corroborative value) of Mark Castoreno's testimony and, by extension, Sheila's testimony.

The exclusion of evidence violated Petitioner's right to confront witnesses to fully develop and test the reliability of testimony from Sheila and Mark Castoreno through cross-examination.  The trial court deprived the jury of information necessary to properly evaluate the credibility of Sheila, the prosecution's lead witness, resulting in a "substantial and injurious effect" on the verdict.

United States District Court
For the Northern District of California

### 3.    The State Court Excluded the Evidence Contrary to and in an Unreasonable Application of Supreme Court Precedent

Issuance of a writ of habeas corpus is warranted when the state court decision runs contrary to or unreasonably applies clearly established federal law as set forth in Supreme Court decisions.  28 U.S.C. § 2554(d).  Denying Petitioner the right to meaningfully cross-examine the prosecution's two leading witnesses ran contrary to the Supreme Court's precedents in <u>Van Arsdall</u>, <u>Davis</u>, and <u>Olden</u>, which recognize the importance of presenting particularized credibility challenges during cross-examination of key witnesses to expose bias, prejudices, or ulterior motives.  The Court of Appeal's finding that the excluded evidence was cumulative of evidence in the record ran contrary to the Supreme Court's recognition in <u>Davis</u> that particularized attacks on witness credibility are distinct from general attacks.  The state court violated Petitioner's Confrontation Clause rights by excluding highly probative issues from Petitioner's cross-examination of Sheila and Mark Castoreno.  Because the exclusion of evidence ran contrary to established Supreme Court precedent, habeas relief is proper under AEDPA.

### C.    The State Court Denied Petitioner Due Process by Completely Excluding Non-Cumulative Evidence Relevant to Sheila's Credibility, the Central Issue of the Case

The Constitution "guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984)).  Evidence may be excluded without violating due process if "its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."  <u>Holmes v. South Carolina</u>, 547 U.S. 319, 326 (2006).  Thus, rule makers are given wide latitude to exclude evidence from criminal trials, limited by the constitutional right to present a defense rooted in the Sixth and Fourteenth Amendments.  <u>Id.</u> at 324.  In evaluating whether a due process violation occurred, due weight must be given to the state's interests underlying any evidentiary rule.  <u>Miller</u>, 757 F.2d at 998 (citing <u>Perry v. Rushan</u>, 713 F.2d 1447, 1452-53 (9th Cir. 1983)).

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**1.    Constitutional Error Occurred Because the Allegedly False Prior Accusations Were Highly Relevant to Sheila's Credibility**

The California Court of Appeal acknowledged that the exclusion of the victim's prior false accusations constituted an error under state law at the time of appeal, undermining any state interest in excluding the evidence.  See Op. at 11-12, 14 n.6.  However, the Court of Appeal held that no constitutional error occurred because Petitioner was not completely barred from presenting a defense.  Id. at 14-15.

To determine whether exclusion of evidence violated the due process right to a fair trial or the right to present a defense, the Court balances five factors: "(1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense."  Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004) (citing Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985)).

The first factor, probative value, weighs in favor of finding constitutional error.  The Supreme Court has recognized that the opportunity to challenge the credibility of the prosecution's key evidence is an essential component of procedural fairness.  Crane v. Kentucky, 476 U.S. 683, 691 (1986).  In Crane, the police arrested the petitioner for a suspected crime.  Id. at 684.  Once in custody, the petitioner began confessing to unrelated crimes.  Id.  The police transferred the petitioner to a detention center, where he eventually confessed to shooting a clerk while robbing a liquor store.  Id.  Before trial for the liquor store shooting, the petitioner sought to suppress the confession as involuntary, testifying that he had been held in a windowless room for a long period of time, that he had been surrounded by numerous officers, that he had been denied permission to contact his mother, and that he had been coerced into providing the false confession.  Id. at 684-85.  The police officers testified to a different version of the events, and the trial court denied the motion to suppress as an attempt to re-litigate voluntariness.  Id. at 685.

During opening statements, the prosecutor acknowledged that the case relied almost entirely on the confession and the testimony of the petitioner's uncle, who had admitted to

**United States District Court**
For the Northern District of California

1    being present during the crime.  Id.  The petitioner argued that the confession contained

2    inconsistencies and should not be believed.  Id.  The prosecutor moved to prevent the

3    petitioner from introducing evidence of the circumstances surrounding the confession,

4    arguing that its voluntariness had already been established.  Id. at 685-86.  The petitioner

5    pointed out that the evidence did not seek to re-litigate voluntariness, but instead questioned

6    the credibility of the confession.  Id. at 686.  The trial court granted the motion.  Id.  The jury

7    found petitioner guilty.  Id.  The Kentucky Supreme Court affirmed, viewing the excluded

8    testimony as relevant only to the voluntariness of the confession, not its credibility.  Id.

9         The Supreme Court reversed, holding that due process would be violated if states

10   could exclude evidence bearing on the credibility of a confession when that evidence is

11   central to a defendant's claim of innocence.  Id. at 690.  Exclusion of the evidence would

12   deprive the defendant of the right to have the prosecution's case "survive the crucible of

13   meaningful adversarial testing."  Id. (quoting United States v. Cronic, 466 U.S. 648, 656

14   (1984)) (internal quotations omitted).  Because no physical evidence linking the petitioner to

15   the crime existed and the prosecutor admitted that the case depended on the confession, the

16   evidence undermining the credibility of the confession was "all but indispensable" to the

17   theory of defense, especially in the absence of any "rational justification for the wholesale

18   exclusion of this body of potentially exculpatory evidence."  Id.

19        Here, the trial court's exclusion of evidence ran contrary to the governing principle of

20   Crane that the accused must be permitted to challenge the credibility of the prosecution's key

21   evidence.  Although Crane dealt with the credibility of a confession, the due process

22   principles are transferrable to Sheila's testimony in the instant case.  Like the confession in

23   Crane, Sheila's accusations formed the core of the prosecutor's case against Petitioner.  See

24   Op. at 13.  No physical evidence existed, and Petitioner rested his entire defense on denying

25   any inappropriate conduct and undermining the credibility of Sheila's accusations.  See Op.

26   at 13.  A prior false accusation of sexual abuse against her brother, John Averilla, would have

27   significantly affected Sheila's credibility.  The defense offered evidence that Sheila had

28   alleged that John Averilla had "made a pass at her" and that Sheila had previously used the

**United States District Court**
For the Northern District of California

1  language to mean sexual molestation.  § at 2.  Sheila also used "pass" to refer to molestation

2  by her father in her trial testimony, making the allegations against John Averilla factually

3  similar to the allegations against Petitioner.  Id. at 3.  Thus, the evidence had high probative

4  value on the issue of Sheila's credibility.  Like the exclusion of evidence related to the

5  credibility of a confession when the confession is the prosecutor's primary evidence,

6  exclusion of evidence highly relevant to the credibility of the prosecution's key witness

7  strongly suggests that a violation of due process occurred.  See Holley, 568 F.3d at 1099

8  (citing Van Arsdall, 475 U.S. at 680).

9        The second and third factors, reliability and the ability of evaluation by the trier of

10  fact, weigh in favor of finding constitutional error.  John Averilla testified at trial and was

11  prepared to testify as to the alleged accusations, which would have allowed the jury to form a

12  conclusion as to whether the alleged abuse by John Averilla occurred.  CT at 107-08.  Had

13  John Averilla been permitted to testify regarding the allegedly false accusation, the

14  prosecution could have tested the reliability of his testimony through cross-examination.  But

15  because the trial court excluded the evidence, Petitioner never had the opportunity to develop

16  the falsity of Sheila's statement.[8]  While permitting the evidence to be admitted would have

17  required time to develop the record so that the jury would be able to decide whether the false

18  allegations occurred and whether John Averilla molested Sheila, the trial court should have

19  limited the amount of time dedicated to this issue rather than completely exclude the

20  evidence.  See Holley, 568 F.3d at 1100.

21        The fourth factor, cumulativeness, weighs in favor of finding constitutional error.  The

22  Court of Appeal concluded that no constitutional violation occurred because the excluded

23  testimony was merely cumulative of other evidence questioning Sheila's credibility.  Op. at

24  13-15.  However, the evidence in the record of Sheila's untruthfulness was limited to her

25

26

27        [8] In contrast, Sheila's accusations directed towards her boyfriend at the time, Rommel Carlos, could not have been verified at the original trial and thus had less probative value.  Rommel was not willing to testify at the original trial, so the jury would not have had a chance to evaluate the reliability

28  of his statements.  § at 2.  However, Mr. Rommel expressed his willingness to testify at a new trial.  CT at 252-53, 256-57.

**United States District Court**
For the Northern District of California

1    family's general opinion that she "was not truthful," with no factual basis permitted.  § at 7,

2    9.  As discussed above, the evidence was not cumulative.  See Davis, 415 U.S. at 316.

3        Finally, the fifth factor, the significance to the defense, also weighs in favor of finding

4    constitutional error.  Petitioner's entire defense rested on his denial of any abuse and required

5    undermining the credibility of Sheila's accusations.  See Op. at 13 ("this trial was a

6    credibility contest between Sheila and [Petitioner]").

7        All of the Chia factors weigh in favor of finding constitutional error.  Therefore, the

8    trial court violated Petitioner's due process rights by excluding John Averilla's testimony

9    regarding Sheila's prior allegations against him of sexual abuse.

### 2.    Harmful Error Occurred Because the Prosecution's Case Depended Almost Entirely on Sheila's Credibility

11        To justify habeas relief, the exclusion of the evidence must have been a constitutional

12    error and had "a substantial and injurious effect" on the verdict.  Brecht, 507 U.S. at 623

13    (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

15        Exclusion of prior false accusations of sexual abuse result in harmful error when the

16    prosecution's case depends on the complaining witness's credibility.  Franklin v. Henry, 122

17    F.3d 1270, 1273 (9th Cir. 1997), overruled on other grounds, Payton v. Woodford, 299 F.3d

18    815 (9th Cir. 2002).[9]  In Franklin, a pre-AEDPA case, the petitioner filed for a writ of habeas

19    corpus claiming that the trial court violated his right to due process by excluding evidence of

20    prior false accusations.  122 F.3d at 1272.  The complaining witness claimed that the

21    petitioner touched her inappropriately.  Id. at 1271.  After being interviewed by her mother,

22    the complaining witness amplified her accusations in frequency and severity.  Id.  The family

23    members testified that the complaining witness had never shown hostility towards the

24    accused, and no physical evidence of abuse existed.  Id.  The accused denied any sexual

---

[9] The California Court of Appeal cited People v. Franklin, 30 Cal. Rptr. 2d 376 (Ct. App. 1994), for the proposition that the evidentiary value of a statement of sexual conduct could be in the truth of the statement, not whether the witness engaged in the activity.  Op. at 12.  The court went on to note that, in People v. Franklin, the state appellate court found the exclusion of statements to be harmless. Id.  The court acknowledged that the Ninth Circuit subsequently granted habeas relief after finding the error to not be harmless, but did not attempt to distinguish the Ninth Circuit's decision from the instant case.  Id.

abuse.  <u>Id.</u>  The accused attempted to introduce evidence that the complaining witness had

falsely accused her mother of sexual abuse.  <u>Id.</u> at 1272.  The trial court excluded the

evidence, and the jury returned a verdict of guilty.  <u>Id.</u>  The California Court of Appeal

recognized that the false statement of sexual abuse would have been relevant to the jury's

credibility determination and should have been admitted.  <u>Id.</u>  However, the Court of Appeal

concluded that, although the case turned primarily on credibility, the exclusion was harmless

because the record contained other evidence impeaching the complaining witness's

credibility.  <u>Id.</u>  The district court agreed, denying the habeas petition finding that the error

did not reach the requisite level.  <u>Id.</u> at 1272-73.

The Ninth Circuit reversed, concluding that the exclusion of evidence warranted

granting the petition.  <u>Id.</u> at 1273.  The Ninth Circuit noted that the case did not involve

significant physical evidence and ultimately turned on the complaining witness's credibility.

<u>Id.</u>  Thus, "any evidence bearing on [the complaining witness's] credibility must be regarded

as having significance."  <u>Id.</u>  The court acknowledged that the jury discounted other

impeachment evidence in the record, making it difficult to determine whether the jury would

have believed the evidence of a specific false accusation.  <u>Id.</u>  Because the court had "grave

doubt as to the effect of the error," it granted the petition.  <u>Id.</u> (citing <u>O'Neal v. McAninch</u>,

513 U.S. 432 (1995) (pre-AEDPA, courts should grant habeas petitions when "in grave

doubt" about the harmlessness).  Judge O'Scannlain concurred separately, believing that the

exclusion had the requisite harmful effect on the verdict to grant the petition without reliance

on <u>O'Neal</u>.  <u>Id.</u> at 1274 (O'Scannlain, J., concurring).

Here, the exclusion of evidence constituted harmful error.  This case boiled down to a

credibility contest between Sheila and Petitioner because no physical evidence was available.

Op. at 13.  Petitioner introduced other impeachment evidence through opinion testimony

from the family that Sheila was untruthful, but there were no specific instances of Sheila's

dishonesty.  § at 7, 9.  Thus, while other impeachment evidence existed, the excluded

evidence had a substantially different nature from the evidence in the record.  <u>See</u> <u>Redmond</u>,

240 F.3d at 591-92.  The jury considered all of the impeachment evidence in the record when

it rendered a guilty verdict, including John Averilla's testimony that he shared the family's opinion that Sheila was untruthful.  SS at 9.  However, because the state court withheld evidence critical to fully evaluating Sheila's credibility, making Mark Castoreno's testimony misleading, here there is a stronger case for harmful error than in <u>Franklin</u>.

Furthermore, courts do not need to speculate as to the jury's acceptance of the evidence, courts merely ensure that the jury has the evidence available when evaluating credibility.  <u>See</u> <u>Davis</u>, 415 U.S. at 317 (quoting <u>Douglas v. Alabama</u>, 380 U.S. 415, 419 (1965)) ("We cannot speculate as to whether the jury, as the sole judge of the credibility of a witness, would have accepted this line of reasoning . . . [b]ut we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness's] testimony which provided 'a crucial link in the proof . . . of petitioner's act.'").  Had Petitioner been permitted to introduce evidence that Sheila's original conversations with Mark Castoreno only accused Rommel Carlos of sexually abusing her and never mentioned Petitioner, the jury would have been able to fully evaluate Sheila's credibility in context.  Without the critical facts that formed the basis of Petitioner's challenge to Sheila's credibility, it could have appeared to the jury as if Petitioner and his family simply made baseless attacks on the truth of Sheila's accusations.  <u>See</u> <u>id.</u> at 318. Therefore, given the combined effect of the excluded evidence, the erroneous exclusion had the requisite "substantial and injurious effect" on the verdict. <u>See</u> <u>Brecht</u>, 507 U.S. at 623.

### 3.   The Court of Appeal Excluded Evidence Contrary to Supreme Court Precedent and Adopted an Incorrect Standard of Review

The California Court of Appeal's rejection of Petitioner's due process claim was contrary to clearly established Supreme Court precedent and therefore warrants habeas relief. The Court of Appeal correctly recognized that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Op. at 14 (quoting <u>Crane</u>, 476 U.S. at 690) (internal quotations omitted).   The court further noted that the right to present evidence is sometimes subordinate to other legitimate interests in the criminal process, including the standard rules of evidence.  <u>Id.</u>

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

However, the Court of Appeal misunderstood the principle of <u>Crane</u> that due process guarantees defendants "a meaningful opportunity to present a complete defense." <u>Crane</u>, 476 U.S. at 690 (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984)). The <u>Crane</u> Court explained that a "complete defense" included the opportunity to present evidence that is "central to the defendant's claim of innocence," especially when that evidence tests the credibility of the prosecution's key evidence. <u>Id.</u> The California Court of Appeal wrote:

> "Although completely excluding evidence of an accused defense theoretically could rise" to the level of impairing an accused's right to present a defense (<u>People v. Fudge</u>, [875 P.2d 36, 51 (Cal. 1994)]), such was not the case here. As noted, all Sheila's family members who testified stated that Sheila was untruthful. Thus, appellant was not precluded from raising a defense.

Op. at 15. The Court of Appeal concluded that Petitioner was not <u>completely</u> precluded from raising a defense because Sheila's family members testified as to her untruthfulness, and that therefore no constitutional error occurred. As discussed above, the particularized attack on the credibility of Sheila's accusations based on prior false allegations was substantively different from the family's opinion testimony of Sheila's untruthfulness. Like in <u>Crane</u>, Sheila's prior false accusations go directly to the credibility of her accusations against Petitioner, not to a general propensity to lie. Petitioner's argument that Sheila fabricated the accusations formed the entirety of his defense. Directly attacking the credibility of Sheila's testimony provided more potent impeachment value than indirectly attacking her credibility by questioning her general reliability, and was thus "indispensable" to Petitioner's defense. <u>Crane</u>, 476 U.S. at 683; <u>see</u> <u>Redmond</u>, 240 F.3d at 591-92; <u>White</u>, 399 F.3d at 26; <u>cf. Davis</u>, 415 U.S. at 316.

As a result of its conclusion contrary to <u>Crane</u>, the Court of Appeal did not treat the error as constitutional. <u>See</u> Op. at 14 ("the trial court's evidentiary rulings . . . had absolutely no impact on appellant's ability to testify that Sheila was untruthful"). Thus, the Court of Appeal failed to apply the proper standard that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967); <u>see</u> Op. at 14. Instead, the Court of Appeal applied the standard that harmful error occurred only if it resulted in a

miscarriage of justice, effectively the polar opposite of the <u>Chapman</u> standard.  Op. at 14

(citing <u>People v. Watson</u>, 299 P.2d 243, 252 (Cal. 1956)).  Because the Court of Appeal

applied the incorrect standard of review, habeas relief is warranted.  <u>See</u> <u>Frantz v. Hazey</u>, 533

F.3d 724, 734-35 (9th Cir. 2008) (state court acted "contrary to" Supreme Court precedent by

applying the improper standard to harmless error analysis).

     The Court of Appeal's dismissal of Petitioner's due process claim ran contrary to the

principles of <u>Crane</u>, and, as a result, the court to failed to apply the proper <u>Chapman</u> standard

on review.  Therefore, AEDPA authorizes the Court to issue a writ of habeas corpus.

## IV.   CONCLUSION

     For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus is

GRANTED.  Respondent shall release petitioner from custody, unless, with thirty days of the

filing of this order and entry of judgment thereon, respondent has filed an appeal with the

United States Court of Appeals for the Ninth Circuit or the State has set a date for a new trial.

The Clerk shall close the file.

     **IT IS SO ORDERED.**

Dated: March 23, 2012                        CHARLES  R. BREYER
                                          UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California